**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

DETRICK HOUSTON,                          )
                                          )
                    Plaintiff,            )
                                          )
              v.                          )          CAUSE NO. 2:07-CV-0385 PS
                                          )
BERNARD FREEMAN, *et al.*,                )
                                          )
                    Defendants.           )

## OPINION AND ORDER

Detrick Houston, a Federal prisoner confined at the United States Penitentiary at

Leavenworth, Kansas, filed a complaint pursuant to 42 U.S.C. § 1983, alleging a bevy of

constitutional violations emanating out of his stay at the Lake County Jail, where he was being

housed as a federal pretrial detainee. The defendants are Lake County Sheriff Roy Dominguez

and Jail Warden Bernard Freeman. This case is before the Court on Plaintiff's amended

complaint.

Pursuant to 28 U.S.C. § 1915A(a), the Court must review any amended "complaint in a

civil action in which a prisoner seeks redress from a governmental entity or officer or employee

of a governmental entity." The Court must dismiss an action against a governmental entity or

officer or employee of a governmental entity if it is frivolous or malicious, fails to state a claim

upon which relief may be granted, or seeks monetary relief against a defendant who is immune

from such relief. 28 U.S.C. § 1915(b). Courts apply the same standard under § 1915A as when

addressing a motion under RULE 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir.

2006).

The pleading standards were recently retooled by the Supreme Court. In the context of a

motion to dismiss for failure to state a claim, the Court stated that the "plaintiff's obligation to

provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (quotation marks omitted).  Instead the Court held that the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. at 1965.  Two weeks later the Supreme Court decided *Erickson v. Pardus*, 127 S.Ct. 2197 (2007).  In *Erickson* the Court also took up the issue of pleading standards, but this time in the context of *pro se* litigation.  In *Erickson*, the Court stated that "[s]pecific facts are not necessary" to meet the requirements of Rule 8(a).  The Court further noted that a "document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Id*. at 2200 (quotation marks and citation omitted).  In an effort to reconcile *Twombly* and *Erickson* the Seventh Circuit has read those cases together to mean that "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."  *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

Houston brings this action under 42 U.S.C. § 1983, which provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law.  To state a claim under § 1983, a plaintiff must allege violation of rights secured by the Constitution and laws of the United States, and must show that a person acting under color of state law committed the alleged deprivation.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  The first inquiry in every § 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States.  *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

Houston seeks damages for conditions of confinement at the Lake County Jail while he was held there as a pretrial detainee. The Eighth Amendment protects convicted prisoners from cruel and unusual punishments. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979). The rights of pretrial detainees are derived from the Fourteenth Amendment's Due Process Clause. *Id.* But "[a]n act or practice that violates the eighth amendment also violates the due process rights of pretrial detainees." *Martin v. Tyson*, 845 F.2d 1451, 1457 (7th Cir. 1988).

A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294 (1991). The Eighth Amendment requires that prison officials ensure that inmates receive adequate food, clothing, and shelter. *Farmer*, 511 U.S. at 832. But conditions that merely cause inconveniences and discomfort or make confinement unpleasant do not rise to the level of constitutional violations. *Adams v. Pate*, 445 F.2d 105, 108-09 (7th Cir. 1971).

Houston's twenty-nine page statement of claim presents two issues dealing with conditions of confinement at the Lake County Jail. His first issue deals with Staph disease, which Houston states was a problem at the jail. He alleges that conditions the defendants created or tolerated at the jail made it more likely that Staph infection could spread from one inmate to another and that the Lake County Jail did not provide adequate and effective treatment for inmates with Staph disease.

The Constitution doesn't mandate comfortable prisons or jails, and "only those deprivations denying "'the minimal civilized measure of life's necessities' . . . are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  A plaintiff asserting an Eighth Amendment claim must show that, objectively, the alleged deprivation was sufficiently serious to rise to the level of a Constitutional violation, and that the defendant acted with deliberate indifference. *Farmer*, 511 U.S. at 834.  Houston does not allege that he contracted Staph disease at the jail or allege any other actual harm from the conditions he complains of.  Other inmates may have contracted Staph disease while they were at the jail, and may have a claim upon which relief can be granted against these defendants.  But Houston may not assert the rights of any other inmate who may have suffered actual harm from this policy because he lacks standing to do so.  *See Elk Grove Unified Sch. Dist. v Newdow*, 542 U.S. 1, 12 (2004).

Issue two of the amended complaint's statement of claim, entitled "Jail Conditions,"deals with a variety of conditions at the jail. In the first paragraph, entitled "Restroom Facilities," Houston alleges that "[i]nmates are locked out of their cells for hours at a time, and each day they spend a total of 10 hours in the day room, without access to the toilets in their cells."  (DE 12-1 at 19).  He further alleges that the day room had no toilet facilities, and that "[p]olicy dictates that officers not open the cells to allow inmates to be able to perform excretory functions or to use the toilet. . . ."  (*Id.*)

If jail officials prevented inmates from having access to toilet facilities for ten straight hours every day, it might state a claim upon which relief can be granted.  But Houston does not allege that inmates did not have access to the commodes in their cells for ten straight hours, and

4

the amended complaint establishes that this was not the case.  The prisoners were in the dayroom a total of ten hours a day, but Lake County Jail officials broke up the ten hours with scheduled periods where inmates had access to their cells and to the commodes in their cells.  Conditions that merely cause inconvenience and discomfort or make confinement unpleasant do not rise to the level of constitutional violations.  *Adams*, 445 F.2d at 108-09.

In his next claim, entitled "Use of Showers," Houston asserts that the defendants required all thirty-two inmates in his unit to shower in four shower stalls within a one hour period between 6:30 a.m. and 7:30 a.m., during which the dayroom was closed and only the showers were open.  For the rest of the day, Houston states that the showers were closed to all inmates. Houston complains that requiring inmates to shower early in the morning was inconvenient, and that many of them decided to go without showering because they would rather sleep in.  The Constitution, however, does not require jail officials to establish a shower schedule that inmates feel is convenient.  The Lake County Jail policy provided adequate time for all of the inmates to shower, if they chose, and did not deprive them of the minimal civilized measure of life's necessities.  *See Henderson v. Lane*, 979 F.2d 466, 468 (7th Cir. 1992).  If prisoners made individual decisions to skip showers in favor of sleeping in it is they, not the jail administration, who were responsible for any deterioration in their personal hygiene.

In his next claim, entitled "Cell Cleaning," Houston complains that jail officers did not inspect the cells other than by routinely looking into them during count times, and that the defendants only provided cleaning supplies to inmates once a week.  The next claim, entitled "The Dayroom" asserts that the administration did not conduct daily inspections of the dayroom. According to the amended complaint, the administration provided cleaning supplies after each

meal for inmate volunteers to clean the day room, but that only "a  half-hearted effort is made to clean the dayroom quickly so that inmates can return to their daily routine."  (DE 12-1 at 22.)  In his claim entitled "Shower Stalls," Houston states that inmates consistently urinated in the shower stalls and that the defendants only provided cleaning supplies once a week.

Obduracy and wantonness rather than inadvertence or mere negligence characterize conduct prohibited by the Eighth Amendment.  *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994).  "To state a claim under the Eighth Amendment, [a plaintiff] must, at minimum, allege facts sufficient to establish that the defendants possessed a total unconcern for [his] welfare in the face of serious risks."  *Id*. at 124 (citations omitted).  That jail officials provided cell and shower cleaning materials once a week and materials to clean the day room after each meal establishes that they were not indifferent to sanitation problems.

In his claim entitled "Water Fountains," Houston alleges that "[t]he administration of LCJ does not provide a water fountain in the dayrooms of the housing units.  Inmates have no access to water in the dayrooms of the pods, for hours at a time." (DE 12-1 at 24.)  As already noted, the time inmates spent in the dayroom was broken by periodic access to their cells, which had running water.  Moreover, in the portion of his amended complaint dealing with meals, Houston states that inmates were fed three times a day in the dayroom.  Accordingly, the facility provided liquid refreshment to the inmates at least three times during the period they spent in the day room in addition to some opportunity to go to their cells.  It might be more convenient for inmates if the jail had a drinking fountain available in the day room, but giving them something to drink with meals three times a day as well as periodic access to water in their cells did not deprive them of the minimal civilized measure of life's necessities.

In his claim entitled "Uniform Exchange," Houston alleges that the Lake County Jail issued prisoners one uniform to wear for a week.  In his claim entitled "Underwear," Houston asserts that jail officials did not provide underwear to indigent inmates.  In his claim entitled "Blankets," he states that the administration did not exchange prisoners' blankets on a regular basis.

Conditions that merely cause inconvenience and discomfort or make confinement unpleasant don't rise to the level of constitutional violations.  Providing one uniform a week and not having a regular exchange for blankets does not deprive a prisoner of the minimal civilized measure of life's necessities.  If jail officials did not provide underwear to an indigent prisoner who did not have his own, and the prisoner suffered actual harm, then it might state a claim upon which relief could be granted.  But Houston does not allege that he suffered any actual harm, and it is not reasonable to infer that he suffered any actual harm from this practice.  Indeed, Houston does not even allege that he was an indigent inmate.  It may be that some inmates at the jail could not afford underwear and suffered harm, but Houston may not assert the rights of those inmates because he lacks standing to do so.  *See Elk Grove*, 542 U.S. at 12.

In his claim entitled "Personal Hygiene Items," Houston asserts that the jail only gave inmates a toothbrush, small tubes of toothpaste, small bars of soap, a roll of tissue, and a spoon.  No deodorant, lotions or other cosmetics were provided to indigent inmates and while additional soap and tissue was issued weekly, toothpaste was not reissued.  Houston alleges that indigent inmates were unable to replace their toothpaste or supplement their personal hygiene items with purchases from the commissary.  But, with the possible exception of denial of toothpaste to indigent inmates, the policy alleged does not deprive prisoners of the minimal civilized measure

of life's necessities.  It may be that some indigent inmates ran out of toothpaste, could not afford to buy more, and suffered harm, but Houston does not allege that he was indigent, and he may not assert the rights of any other inmate because he lacks standing to do so.

In his claim entitled "Meals," Houston alleges that the defendants provided small portions in the meals they served to the inmates.  The Constitution requires that inmates receive adequate amounts of nutritious food.  *See Farmer*, 511 U.S. at 832.  But Houston does not allege, and based on his amended complaint it would not be reasonable to infer, that his total dietary intake while he was housed at the jail denied him an adequate quantity of nutritious food; nor does he allege any actual harm from the meals served.

Houston submits two claims dealing with access to legal materials and the courts, entitled "Postage & Package" and "Law Library."  To establish a violation of the right to access to the courts, an inmate must establish that jail officials failed to provide the assistance required by *Bounds v. Smith,* 430 U.S. 817 (1977), and show that he suffered actual injury.  *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that *Bounds* did not eliminate the actual-injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts).  The actual-injury requirement applies even in cases "involving substantial, systematic deprivation of access to court," including the "total denial of access to a library," or "an *absolute* deprivation of access to *all* legal materials."  *Lewis*, 518 U.S. at 353 n. 4 (emphasis in original; brackets and quotation marks omitted).  Standing alone, delay and inconvenience do not rise to the level of a constitutional deficiency.  *Campbell v. Miller*, 787 F.2d 217, 229 (7th Cir. 1986), *cert. denied*, 479 U.S. 1019 (1986).

In his claim entitled "Postage & Package," Houston alleges that the jail "administration does not provide indigent inmates with stamped envelopes to meet their needs to have access to the court.  Nothing is provided to indigent inmates, no stamps, no envelopes, no paper, and no pens."  (DE 12-1 at 30.)  If Lake County Jail officials routinely severely limit indigent prisoners' access to scribe materials and postage, they may eventually violate a prisoner's right of access to the courts.  But as already noted, Houston does not allege that he was indigent.  Moreover, delay and inconvenience do not rise to the level of a constitutional deficiency, and Houston does not allege that he suffered any actual harm from receiving limited amounts of scribe materials and free postage at the jail.  Houston was able to file this complaint while he was still housed at the Lake County Jail.

In his next claim entitled "Law Library," Houston alleges that the jail does not allow inmates access to the law library without a court order to do so.  "This practice keeps inmates ignorant of their charges."  (DE 12-1 at 31.)  A pretrial detainee who is without counsel needs the tools necessary to prepare his defense against the charges against him.  But jail officials are not required to provide legal materials to an inmate who "was represented by counsel on his criminal charges."  *Martin*, 845 F.2d at 1456.  Houston does not allege that he was not represented in his criminal case by an attorney, and the docket in his criminal case, *United States of America v. Detrick Houston*, 2:07-cr-92 RL, establishes that he was represented by counsel in the federal criminal proceedings against him.  Accordingly, an allegation that the Lake County Jail did not afford him access to materials that would assist a federal prisoner in preparing a defense against his criminal charges states no claim upon which relief can be granted.

In his claim entitled "Disrespectful Staff," Houston alleges that "[t]he officers who are assigned to the housing unit control booth are extremely disrespectful in their dealing with the inmates," including using racial epithets, and "bitter black female officers openly being completely disrespectful of black male inmates, for no cause."  (DE 12-1 at 31.)  But there is "a *de minimis* level of imposition with which the Constitution is not concerned," *Ingraham v. Wright*, 430 U.S. 651, 674 (1977), and "[s]tanding alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."  *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000).  This is the sort of claim that "does not come within shouting distance of a constitutional grievance. . . ."  *George v. Smith*, 507 F.3d 605, 608 (7th Cir 2007).  The jail guards may have been unprofessional in their dealings with Houston and other prisoners, but the Constitution doesn't require that custody officers treat inmates with the respect they feel they deserve.

Finally, in his claim entitled "Officer Brutality," Houston alleges that the defendants allowed custody officers to beat inmates or use taser guns on them and that "[t]hese officers terrorize the jail population without cause."  (DE 12-1 at 32.)  Excessive and unnecessary use of force on convicted prisoners violates the Eighth Amendment's cruel and unusual punishments clause, and use of excessive force on pretrial detainees violates the Fourteenth Amendment's due process clause.  But Houston does not allege that he was a victim of excessive use of force by custody officers.  It may be that other inmates at the jail were subjected to excessive use of force, but Houston may not assert the rights of other inmates because he lacks standing to do so.

For the foregoing reasons, the court **DISMISSES** this amended complaint pursuant to 28 U.S.C. § 1915A(b)(1).

**SO ORDERED**.

ENTERED: April 7, 2008

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT